UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GALACTIC VENTURES, LLC,

Plaintiff,

v.

KING COUNTY,

Defendant.

CASE NO. C05-1054RSM

ORDER DENYING SUMMARY JUDGMENT

**I. INTRODUCTION**

This matter comes before the Court on defendant's Motion for Summary Judgment. (Dkt. #20). Defendant argues that plaintiff has failed to state a claim for tortious interference with a business expectancy, plaintiff was not due any process under the Unites States Constitution prior to the letter at issue in this case, and the letter at issue is protected Free Speech under the First Amendment. Plaintiff responds that he has established a cause of action for tortious interference with a business expectancy, or has at least raised a genuine issue of material fact as to the elements of that claim, and that he has properly asserted a procedural due process claim pursuant to 42 U.S.C. § 1983. (Dkt. #21). For the reasons set forth below, the Court agrees with plaintiff and DENIES defendant's motion for summary judgment.

## II. DISCUSSION

### A. Background

This action arises from a proposed real estate transaction between plaintiff and Safeway, Inc. ("Safeway"). In November 2001, plaintiff's representatives entered into negotiations with Safeway for a sublease and option to purchase a former Safeway location in the unincorporated White Center area of King County, Washington. Plaintiff intended to operate a restaurant and lounge with a card room gambling facility.

On February 4, 2002, Safeway issued a Letter of Intent to lease its interest in the property to plaintiff. Barry Klepper signed the Letter of Intent on behalf of plaintiff. Plaintiff then began hiring design and construction professionals, architects and engineers.

On March 29, 2002, plaintiff filed a mandatory Pre-Application Meeting Request Form for the project with the King County Department of Development and Environmental Services ("DDES"). The pre-application conference occurred on April 18, 2002. Plaintiff then submitted permit applications on May 2, 2002. There were no zoning issues with the proposal and the parties agree that the application for building permits likely would have been approved assuming plaintiff would have complied with all of its other requirements.

In the meantime, in or around April 2002, King County Economic Development Manager, Ray Moser, learned of the proposed casino from a staff member in his office, who had apparently learned of the casino from a community member. Mr. Moser then confirmed with DDES that a permit application was pending and discussed the proposal with various community leaders.

On May 16, 2002, those community leaders sent a letter to Safeway's Seattle Division President, Greg Sparks, "urging" Safeway to reconsider its negotiations with plaintiff. The letter was sent on King County Executive Ron Sims' letterhead, and signed by Ron Sims, Congressman David Reichert (then King County Sheriff), King County Prosecuting Attorney

Norm Maleng, King County Councilman Dow Constantine, and several other community members and local business leaders.

On May 23, 2002, Safeway sent a facsimile to plaintiff regarding the county's letter, and stating that it was going to table all negotiations with plaintiff until it could gain a better understanding of the "ramifications" of that letter. Less than one week later, Safeway notified plaintiff that it would not enter into any agreement for lease of its property, and terminated its business relationship with plaintiff.

On June 6, 2002, Safeway wrote to Mr. Sims confirming that it had terminated its relationship with plaintiff and would not be moving forward with a casino project on its property.

On March 11, 2005, plaintiff filed a claim for damages with King County in the amount of $3,000,000. The county did not respond. This lawsuit followed.

**B. Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury

could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995); *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th Cir. 1980).

**C. Tortious Interference Claim**

Defendant first argues that plaintiff has failed to state a proper claim of tortious interference with a business expectancy. In order to succeed on such a claim, plaintiff must prove that: (1) a valid business expectancy existed; (2) defendant had knowledge of that business expectancy; (3) an intentional interference induced the termination of that expectancy; (4) defendant interfered for an improper purpose or used improper means; and (5) there were resulting damages. *Koch v. Mutual of Enumclaw*, 108 Wn. App. 500, 506 (2001) (citing *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 157 (1997).

Defendant argues that plaintiff has not met any of these elements. The Court disagrees. Plaintiff has produced evidence sufficient to create genuine issues of material fact on all of these elements and is entitled to go forward with this claim.

First, plaintiff has produced evidence of a valid business expectancy. A valid business expectancy includes any prospective contractual or business relationship that would be of pecuniary value. *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Group, Inc.*, 114

Wn. App. 151, 158, 52 P.3d 30 (2002). Here, plaintiff had engaged in lengthy negotiations with Safeway, signed a Letter of Intent, hired architects and contractors to begin construction plans, met with the appropriate county executives, and applied for permits. Defendant cannot reasonably argue that these actions do not demonstrate a valid business expectancy. Furthermore, defendant's argument that Barry Klepper is not a member of plaintiff, and therefore could not bind plaintiff by signing the Letter of Intent, has no merit. The existence of a valid enforceable contract is not necessary to prove valid business expectancy. *Cherberg v. Peoples Nat'l Bank*, 88 Wn.2d 595, 602 (1977) (citing *F.D. Hill & Co. v. Wallerich*, 67 Wn.2d 409, 407 (1965)); *see also Scymanski v. Dufault*, 80 Wn.2d 77, 84-85 (1971); *Kennedy v. Rode*, 41 Wn. App. 177, 181 (1985).

Second, plaintiff has produced evidence that defendant knew of that business expectancy. Indeed, Mr. Moser admits investigating whether plaintiff had filed a permit for the proposed casino, and upon learning that such permit had been filed, he contacted the community leaders that wrote the letter.

Third, plaintiff has produced evidence that defendant "interfered" with its business expectancy by sending the letter to Safeway. The stated purpose of the letter is to "urge" Safeway to reconsider leasing its property to defendant. Moreover, there is no dispute that Safeway terminated its agreement of intent to lease the property to plaintiff after receiving the letter.

Fourth, plaintiff has raised an issue of material fact as to whether defendant interfered for an improper purpose or through improper means. Plaintiff alleges, and defendant does not disagree, that there were no restrictions on gambling in unincorporated King County at the time the lease proposal was negotiated. Thus, it is likely that plaintiff would have successfully constructed and operated its casino had defendant not mailed the letter to Safeway. Defendant argues that because its letter contained truthful information it cannot be considered improper

purpose or improper means as a matter of law. While plaintiff does not dispute that the letter contained truthful information, this Court finds that it is up to the jury to determine whether such information was used as an improper means or otherwise in bad faith. *Koch* does not instruct otherwise. The *Koch* court examined whether reasonable minds could have differed as to the good faith and honesty of a doctor's opinion about a surgery performed on the plaintiff and whether the plaintiff had produced enough evidence to raise an inference of bad faith. *Koch*, 108 Wn. App. at 507-08. The court ultimately concluded that Koch had not established such an inference. *Id.* For purposes of this motion, and viewing the facts in the light most favorable to plaintiff, the fact that defendant had no other means to prevent the operation of plaintiff's proposed casino creates enough of an inference of bad faith to defeat summary judgment on this question.

Finally, defendant has failed to make any argument as to the fifth element of tortious interference pertaining to damages. Thus, the Court accepts for purposes of this motion that plaintiff did suffer damages in this case.

Defendant argues that even if all of the elements have been met, its conduct is privileged. In support of this argument, defendant relies on *Cherberg*, *supra*. In that case, the court explained that

> in some instances, intentional interference with a business expectancy may be 'privileged' and therefore not a basis for tort recovery. A privilege to interfere may be established if the interferor's conduct is deemed justifiable, considering such factors as: the nature of the interferor's conduct; the character of the expectancy with which the conduct interferes; the relationship between the various parties; the interest sought to be advanced by the interferor; and the social desirability of protecting the expectancy or the interferor's freedom of action.

*Cherberg*, 88 Wn.2d at 604-05 (citations omitted)

Plaintiff responds that privilege, in this context, is really just another way to approach the fourth element of the tortious interference standard set forth above. The Court is persuaded. In the context of *Cherberg*, wherein the court omitted the fourth element of tortious interference, it

appears that the court's "privilege" discussion really intended to determine whether improper purpose or mean existed. That interpretation is supported by the prior decision in *Calbom v. Knudtson*, 65 Wn.2d 157 (1964), which noted in its discussion of the same privilege that "[t]he basic issue raised by the assertion of the defense is whether, under the circumstances of the particular case, the interferor's conduct is justifiable." *Calbom*, 65 Wn.2d at 163. Because the Court has determined that issues of material fact have been raised as to that issue, the Court declines to find any privilege in this case.

For all of these reasons the Court finds that summary judgment in favor of defendant on plaintiff's tortious interference claim is not appropriate.

**D. Due Process Claim**

Defendant next argues that plaintiff has failed to allege a proper due process claim under 42 U.S.C. § 1983. The Court does not agree. Plaintiff alleges that defendant violated its procedural due process rights by intentionally interfering in plaintiff's negotiations with Safeway instead of allowing the permit process to proceed in its normal course. This is a properly alleged procedural due process claim.

The Fourteenth Amendment's guarantee of procedural due process protects individuals from erroneous or unjustified deprivations of life, liberty, or property, and assures them that the government deals with them fairly. *Carey v. Piphus*, 435 U.S. 247, 259 (1978). The Ninth Circuit Court of Appeals has explained that "[t]o state a procedural due process claim, [a plaintiff] must establish that he had a protectible property interest in his proposed [permit] application and, if so, that he was denied this property right without the process which was due under the circumstances." *Bateson v. Geisse*, 857 F.2d 1300, 1305 (9th Cir. 1988); *see also Knudson v. Ellensburg*, 832 F. 2d. 1142, 1145 (9th Cir. 1987) (explaining that in a procedural due process case a court must first determine whether a liberty or property interest exists entitling the individual to due process).

Plaintiff has demonstrated a valid property interest. In *Bateson*, the Court of Appeals explained that "'[a] property interest in a benefit protected by the due process clause results from a "legitimate claim of entitlement" created and defined by an independent source, such as a state or federal law.'" *Bateson*, 857 F.2d at 1305. In the instant case, plaintiff applied for a permit to build and operate its casino. Washington State courts have determined that a constitutionally cognizable property right exists when a permit to use and enjoy land is sought. *Mission Springs, Inc. v. City of Spokane*, 134 Wn.2d 947, 962-63 (1998).

Defendant does not appear to dispute that such a property interest existed. Instead, defendant argues that plaintiff's claim fails because no process was due at the time defendant wrote the letter to Safeway. Defendant asserts that it did not actually deny plaintiff's permit, its letter was not coercive, and the letter is protected by the First Amendment in any event. These arguments are misguided.

First, plaintiff does not allege that its permit was improperly denied under the permit process. Instead, plaintiff alleges that defendant denied any process whatsoever because it interfered in the process before the permit application could be reviewed, causing the permit procedure to become moot. Defendant concedes that the King County employees signing the letter did so in their official capacities, including King County Executive Ron Sims at the prompting of King County Economic Development Manager, Ray Moser. Because defendant's letter caused Safeway to end its negotiations, plaintiff's permit application was not reviewed by an unbiased King County decision-maker on the merits, the application was never fully processed, and no formal decision was ever allowed to be made. Therefore, it is of no import that defendant did not actually deny plaintiff's permit; defendant's actions prevented plaintiff's permit application from ever reaching consideration.

Second, plaintiff has raised a genuine issue of material fact as to whether the letter was actually coercive. Even though the letter did not contain any specific threats or other coercive

language, the letter was signed by King County law enforcement officials including the King County Sheriff and King County Prosecuting Attorney, in addition to the King County Executive and a County Council member, who both have regulatory authority over Safeway. A reasonable person could believe that the reason these individuals signed the letter was to imply that allowing plaintiff to lease the space could have some legal impact on Safeway. Safeway indicated that it believed some action may follow if it did not follow defendant's request to reconsider its negotiations with plaintiff. Indeed, Safeway specifically told plaintiff that it was going to table all negotiations while it considered the "ramifications" of the letter. Federal courts have determined that in this type of situation, the question of whether the letter contained an implicit threat is an issue for the jury. *See Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003).

Defendant urges this Court to follow the Third Circuit Court of Appeals' decision in *R.C. Maxwell Co. v. Borough of New Hope*, 735 F.2d 85 (3d Cir. 1984). The Court finds that argument unpersuasive. In *Maxwell*, the court examined a letter written to Citibank by the New Hope Borough Council urging it to terminate the billboard lease of R.C. Maxwell Co. The court ultimately determined that the letter was not coercive, and was therefore protected by the First Amendment. *Id.* at 88-89. That decision was largely supported by testimony from the Citibank official who had dealt with the council and testified that the decision to terminate the lease was completely voluntary, he had not felt threatened or coerced by the council, and its desire to develop the land with the council's blessing played no part in the decision. In this case, defendant has produced no such testimony from Safeway executive Greg Sparks; therefore, the Court finds it more appropriate to leave the question for the jury.

For the same reasons, the Court is equally unpersuaded that the letter is protected by the First Amendment as a matter of law. This Court acknowledges that "speech by persons who are not decisionmakers and who merely engage in advocacy without threats, intimidation, or

coercion is protected by the First Amendment. [However], [t]he 'critical line for First Amendment purposes must be drawn between advocacy, which is entitled to full protection, and action, which is not.' *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 71 (2d Cir. 1999) (quoting *Healy v. James*, 408 U.S. 169, 192 (1972)). Accordingly, for the reasons discussed above, the jury must determine whether the letter was coercive and whether defendant intended to "act" rather than advocate. Therefore, summary judgment on this issue is not appropriate.

## III. CONCLUSION

Having reviewed defendant's motion for summary judgment (Dkt. #20), plaintiff's response (Dkt. #21), defendant's reply (Dkt. #26), the declarations and exhibits in support of those briefs, and the remainder of the record, the Court hereby ORDERS:

(1) Defendant's Motion for Summary Judgment (Dkt. #20) is DENIED.

(2) The Court will address defendant's pending Motion to Compel in a separate Order.

(3) The Clerk shall forward a copy of this Order to all counsel of record.

DATED this 7th day of June 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE